IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|   |   |
|---|---|
| JEREMIAH S., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARTIN O'MALLEY,[1] ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 2:22cv490 |

## REPORT AND RECOMMENDATION

Plaintiff Jeremiah S. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the Social Security Act. ECF No. 1. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 7.

Presently before the Court are the parties' cross motions for summary judgment, ECF Nos. 9, 11. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Commissioner Martin O'Malley for former Acting Commissioner Kilolo Kijakazi in this matter.

Summary Judgment, ECF No. 9, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 11, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on December 26, 2017. R. at 96, 107[2]; *see also* ECF No. 12 at 2 n.2 (noting a prior typographical error in the record and clarifying Plaintiff filed both applications on December 26, 2017). In his applications, Plaintiff alleged disability due to Crohn's disease and colostrum difficile ("C-diff"), with an alleged onset date of August 25, 2017. R. at 96, 107. Plaintiff's applications were initially denied on August 10, 2018, and again denied upon reconsideration on October 5, 2018. R. at 117–19, 143–45. On November 7, 2018, Plaintiff requested a hearing before an administrative law judge. R. at 189.

Plaintiff's first hearing was held on November 19, 2019, at which Plaintiff appeared with counsel before Administrative Law Judge Maryann Bright ("the ALJ"). R. at 64–94. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 68–92. On February 27, 2020, the ALJ issued a decision finding Plaintiff not disabled. R. at 18–27. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on October 7, 2020, making the ALJ's decision the final decision of the Commissioner. R. at 1–6. Plaintiff then sought judicial review and filed a Complaint in this Court. *Snellings v. Kijakazi*, 2:20cv593, ECF No. 1. Upon consent motion to remand, Plaintiff's case was remanded on April 20, 2021, and the Commissioner was ordered to "direct the [ALJ] to: (1) further evaluate Plaintiff's claim; (2) take any further action necessary to complete the administrative record; and (3) issue a new decision." *Id.*, ECF No. 20.

---

[2] "R." refers to the certified administrative record that was filed under seal on February 6, 2023. ECF No. 6, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

On January 11, 2022, pursuant to the Court's order, the Appeals Council remanded Plaintiff's case back to the ALJ. R. at 1075. Plaintiff's second hearing was held on August 9, 2022, at which Plaintiff appeared with counsel before the ALJ. R. at 995–1025. Again, both Plaintiff and an impartial vocational expert testified at the hearing. R. at 1002–24. On August 23, 2022, the ALJ issued a second decision finding Plaintiff not disabled. R. at 972–85.

Having exhausted his administrative remedies a second time, on November 23, 2022, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On March 3, 2023, Plaintiff filed a Motion for Summary Judgment and brief in support. ECF Nos. 9–10. On March 31, 2023, the Commissioner filed a Motion for Summary Judgment and accompanying memorandum in support. ECF Nos. 11–12. Plaintiff did not file a reply. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

In his appeal to this Court, Plaintiff alleges a closed period of disability beginning on August 25, 2017, and ending on either October 18, 2018, or January 25, 2019. *See* ECF No. 10 at 4. Accordingly, the Court limits its discussion of the factual background to include records only in that timeframe.

Plaintiff was twenty-two years old at the time of his alleged disability onset date of August 25, 2017. R. at 95. At the time of his second ALJ hearing, Plaintiff lived with his mother and her boyfriend. R. at 1003. Plaintiff last worked in 2017 at McDonald's, has an associate's degree in electrical engineering, and was planning to get an IT certificate at the time of his hearing. R. at 1004, 1006.

3

## A. Plaintiff's Medical Records Relevant to Alleged Physical Impairments[3]

Plaintiff was diagnosed with Crohn's disease in 2005. R. at 650. In early September 2017, Plaintiff was seen by Dr. Jacqueline Salcedo with Gastroenterology Consultants. R. at 650. At that time, Plaintiff had just quit his job at McDonald's because "they were pushing him to the edge." R. at 650. He had lost four pounds and was having three bowel movements per day. R. at 650. Plaintiff was admitted to Sentara Princess Anne Hospital on September 24, 2017, for Crohn's disease and C-diff. R. at 681, 683. Upon his admission, he was experiencing pain in his abdomen, which worsened with movement, walking, and eating. R. at 683. At that time, Plaintiff had a fever of 100.3 degrees, and sometimes had diarrhea, loose stools, and blood in his stool. R. at 683. Plaintiff was discharged from the hospital on October 4, 2017, and his pain was considered stable. R. at 681.

Plaintiff followed up from his hospital visit with Dr. Trent Martin in October 2017. R. at 647. Dr. Martin noted that Plaintiff weighed 114 pounds—six pounds less than he weighed at his previous visit. R. at 647. Plaintiff was having three to four bowel movements per day. R. at 647. Upon examination, he had moderate tenderness in his right lower quadrant, but no rebound, guarding, or masses. R. at 648. At his next visit on November 20, 2017, Plaintiff had gained seventeen pounds. R. at 644. Plaintiff complained of gas and bloating, and still had moderate tenderness in his lower right quadrant. R. 645–46.

Plaintiff also presented to Physician Assistant Thomas Bousman on November 16, 2017 ("PA Bousman"). R. at 677. He reported experiencing abdominal pain and blood in his stool, but no nausea, vomiting, or constipation. R. at 679. PA Bousman recommended Plaintiff follow his

---

[3] Because Plaintiff's mental impairments are not at issue, the Court does not address Plaintiff's medical records relating to his mental impairments.

4

medication regimen, and recommended that if Plaintiff had a flare-up, he schedule a session with his physical therapist. R. at 679.

Plaintiff continued to follow up every three months with Dr. Martin in 2018. R. at 641. He continued to complain of abdominal pain, blood in his stool, and he continued to have moderate tenderness in his lower right quadrant. R. at 642–43, 638–39. In April 2018, Plaintiff complained about pain following a bowel movement about twice per week. R. at 638. He reported that at times, his bowel movements felt like "a little bit of stabbing when it is coming out – like scraping" and some blood in his stool. R. at 638. Plaintiff continued to gain weight at each appointment.

Following an increase in his symptoms, in June 2018, Plaintiff followed up with Dr. Martin complaining of nausea. R. at 635. By this appointment, Plaintiff weighed 173 pounds. R. at 637. Plaintiff underwent a Magnetic Resonance Enterography ("MRE") within the previous week, which demonstrated active inflammation in the terminal ileitis with narrowing. R. at 635, 637. Plaintiff endorsed diarrhea, nausea, vomiting, gas, bloating, and abdominal pain. R. at 638. He was having five to six bowel movements per day. R. at 635. Dr. Martin discussed adjusting Plaintiff's medication and beginning a trial of Humira. R. at 637. At his follow-up six weeks later, Plaintiff reported doing well, although his stomach "ha[d] been a little iffy." R. at 898. Plaintiff endorsed some nausea but no vomiting. R. at 898. Upon examination, Plaintiff had mild tenderness in his right lower quadrant, but no rebound, guarding, or masses. R. at 901.

In October 2018, Plaintiff followed up with Dr. Martin, and he reported more nausea than usual and that he was vomiting up to six times in a day. R. at 895. Plaintiff had lost eleven pounds since his previous appointment. R. at 895. Dr. Martin noted an abnormal liver function test, which was persistently elevated with negative workup. R. at 897. Dr. Martin planned to decrease

5

Plaintiff's medication and noted that if the decrease did not cause Plaintiff's liver function test to improve, he would need an esophagogastroduodenoscopy ("EGD") and a liver biopsy. R. at 897.

In January 2019, Plaintiff treated with Dr. Felix Tiongco. R. at 967–68. That day, he had a colonoscopy, which demonstrated an improvement in Plaintiff's Crohn's disease. R. at 966–68.

### B. Relevant Evaluations Completed by State Agency Examiners & Medical Opinions

At the initial level, on July 30, 2018, Dr. Robert McGuffin, M.D., reviewed Plaintiff's medical records. R. at 95–105. Based on that review, Dr. McGuffin ultimately concluded that Plaintiff has the residual functional capacity to perform light work. R. at 104. He determined Plaintiff: can occasionally lift and/or carry twenty pounds; can frequently lift and/or carry ten pounds; can stand and/or walk about six hours in an eight-hour workday; can sit about six hours in an eight-hour workday; and had no restrictions on his ability to push and/or pull. R. at 102. Plaintiff's exertional limitations are based on Plaintiff's Crohn's disease. R. at 102. As for his postural limitations, Plaintiff can: occasionally climb ramps/stairs; occasionally climb ladders/ropes/scaffolds; occasionally stoop, kneel, crouch, and crawl; and can balance an unlimited amount. R. at 103. Plaintiff does not have manipulative, visual, communicative, or environmental limitations. R. at 103. At the reconsideration level, on October 4, 2018, Dr. David Bristow, M.D., reviewed Plaintiff's medical records. R. at 121–31. Dr. Bristow agreed with Dr. McGuffin's opinions. R. at 128–30.

On October 9, 2018, Plaintiff's gastroenterologist, Dr. Martin, completed a form medical source statement. R. at 868. Therein, Dr. Martin noted Plaintiff experienced abdominal pain, abdominal cramping, severe fatigue, malaise, and nausea. R. at 868. He noted that Plaintiff would have six or more bowel movements per day, each lasting ten to fifteen minutes. R. at 868. Dr. Martin found that the frequency of Plaintiff's bowel movements causes him marked/serious

6

fatigue. R. at 868. Finally, he found that Plaintiff's symptoms caused him to be absent from work four or more days per month. R. at 868.

### C. Plaintiff's Testimony at ALJ Hearing

At the second ALJ hearing, Plaintiff testified his alleged disability onset date is August 25, 2017. R. at 1002. As to his work history, Plaintiff testified he last worked in 2017 at McDonald's, at which he worked for four years. R. at 1006. Plaintiff had trouble finding a job during the COVID-19 pandemic because of his immune disorder, but he did occasional side jobs of yard work for his mother and for people whom his mother manages houses. R. at 1003–04, 1015–16. While doing yard work, Plaintiff takes frequent breaks after every thirty minutes or so. R. at 1016. Plaintiff cannot be outside in the heat for more than an hour because he will overheat too fast. R. at 1016. He testified he cannot work because his health fluctuates a lot, and he believes stress will be a challenge to his working, but he thinks he can work part-time and work full-time in the future if his health improves. R. at 1006, 1018–19.

Plaintiff testified that he suffers from depression, anxiety, Asperger's syndrome, Crohn's disease (which is in remission), ADHD, and C-diff. R. at 1006–07, 1014. Plaintiff also has a hiatal hernia. R. at 1012. Plaintiff sees his gastroenterologist three or four times a year, his therapist monthly, his psychiatrist bi-monthly, and his primary care provider once or twice every year or two. R. at 1007. Regarding his symptoms, stress spikes Plaintiff's impairments and symptoms and Plaintiff has diarrhea once or twice every other week. R. at 1014, 1017. Plaintiff's symptoms are mainly nausea, belching, and abdominal pain. R. at 1014. Plaintiff uses marijuana to help with pain and is waiting on a medical marijuana card. R. at 1008. Plaintiff takes Trazadone and Citalopram for his depression and anxiety, and they help with his symptoms, but sometimes make him feel mute and bland for the day. R. at 1017. Plaintiff also takes Klonopin for severe

anxiety attacks. R. at 1017. If Plaintiff stays focused on one thing and distracts himself playing video games, he does not feel much pain. R. at 1015. Plaintiff has trouble sleeping because of his Crohn's disease, his belching, his nausea, and his abdominal pain, which includes stabbing pain. R. at 1010, 1014. Plaintiff has bad nights three or four times a week. R. at 1014. Plaintiff occasionally has morning sickness, which includes feeling nauseous, retching, and feeling sharp pain. R. at 1011–12. When Plaintiff wakes up around 10 a.m. or 11 a.m. he does not have morning sickness. R. at 1012.

Plaintiff usually wakes up around 11 a.m. or 12 p.m. R. at 1009. He testified that his hobbies include reading, video games, and walking. R. at 1009. He also exercises in his room, watches movies, and reads novels. R. at 1009–10. During a normal day, Plaintiff spends three- or four-hours playing video games alone or with friends. R. at 1009, 1013. Plaintiff goes to sleep around 3 a.m. or 4 a.m. because of stomach pain. R. at 1010. Some days, which happen "once or twice a week sometimes[,]" Plaintiff's body shuts down and he relaxes for the day. R. at 1013. Plaintiff also sometimes spends the day in bed because of his depression. R. at 1016.

As to his ability to get around, Plaintiff does household chores including cooking, cleaning, and laundry. R. at 1010. Plaintiff goes grocery shopping with his mother because he does not own a car. R. at 1010. Plaintiff cares for his five pet cats. R. at 1011. Plaintiff does most of the work enrolling in his classes and speaks with his guidance counselors. R. at 1006.

### III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work

8

constitutes substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. §§ 404.1545(a), 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of August 25, 2017. R. at 974. At step two, the ALJ found

9

that Plaintiff had the following severe impairments: Crohn's disease, functional belching disorder, GERD, history of C-diff, depression, Asperger's syndrome, and anxiety. R. at 975. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. R. at 975–77.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: occasionally stoop, crouch, kneel, crawl, and climb ramps or stairs; never climb ladders, ropes, or scaffolds; must work in proximity to restroom, which means on the same floor or the adjacent floor; can tolerate occasional exposure to extreme heat, extreme cold, humidity, vibration, respiratory irritants such as fumes, odors, dust, gases, and poorly ventilated areas, and hazards of operating dangerous vehicles/machinery and working around unprotected heights; can understand, remember, and carry out simple instructions on a regular and sustained basis to complete a normal workday and week; can tolerate occasional interaction with coworkers and supervisors, but no interaction with the public; can use judgment to make simple work-related decisions; and can deal with occasional changes in a routine work setting. R. at 977. In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and 416.929 and SSR 16-3p." R. at 977.

At step four, the ALJ determined that Plaintiff has no past relevant work. R. at 984. The ALJ also found that Plaintiff is considered a younger individual, has at least a high school education, and transferability of job skills is not an issue because he does not have past relevant work. R. at 984. The ALJ determined at step five that Plaintiff could perform other jobs that exist

10

in significant numbers in the national economy, including office helper, assembler, price marker, optical assembler, sorter, and equipment assembler. R. at 984–85. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, August 25, 2017, through the date of her decision, August 23, 2022. R. at 985.

## IV. <u>STANDARD OF REVIEW</u>

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial

of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Though phrased as a single challenge, Plaintiff's appeal to this Court raises two challenges to the ALJ's decision: (1) that the ALJ failed to review probative medical evidence in the record; and (2) that the ALJ failed to consider a closed period of disability. ECF No. 10 at 6–12. In response, the Commissioner argues that the ALJ reviewed the relevant evidence in the medical record, and that the ALJ appropriately found Plaintiff was not disabled during the entire relevant period, including between August 2017 and January 2019. ECF No. 12 at 10–20.

### A. The ALJ Properly Reviewed Probative Medical Evidence in the Record.

After step three of the sequential analysis, the ALJ must determine the claimant's RFC. § 404.1520(a)(4). RFC is defined as "the most" a claimant "can still do despite [his or her] limitations." § 404.1545(a)(1). In making the RFC determination, the ALJ must consider "all the relevant medical and other evidence" in the record and incorporate any impairments supported by objective medical evidence, and those impairments based on the claimant's credible complaints. § 404.1545(a)(3); *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (citing SSR 96–8p, 1996 WL 374184 (July 2, 1996)). In determining the claimant's RFC, the ALJ must "identify the individual's functional limitations" and then assess the individuals "work-related abilities on a function-by-function basis," including the claimant's physical abilities, mental abilities, and any other work-related abilities affected by his or her impairments. *Mascio*, 780 F.3d at 636.

"A necessary predicate to engaging in substantial evidence review . . . is a record of the basis for the ALJ's ruling, which should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record

evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). In evaluating the evidence in the record, ALJ must include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* The ALJ also must "build an accurate and logical bridge from the evidence to [the ALJ's] decision" in order to allow the reviewing court to evaluate the ALJ's decision. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Moreover, "[t]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Soc.*, 769 F.3d 861, 865 (4th Cir. 2014).

At the administrative level, Plaintiff did not request a closed period of disability. Thus, in evaluating Plaintiff's medical records, the ALJ considered Plaintiff's allegation of disability from the alleged onset date of August 25, 2017, through the date of the ALJ's decision, August 23, 2022. R. at 972–85. In considering Plaintiff's claim for DIB and SSI, the ALJ discussed Plaintiff's medical records during the alleged closed period of disability—between August 25, 2017, and October 18, 2018, or January 25, 2019. *See* R. at 978. The ALJ explained that Plaintiff has a history of Crohn's disease, was hospitalized with C-diff infection in September 2017, but was stable on discharge. R. at 978 (citing R. at 405). The ALJ noted that at Plaintiff's follow-up appointment October 2017, his C-diff infection was "now better." R. at 978 (citing R. at 647).

The ALJ did not go through each of Plaintiff's individual follow-up appointments related to Crohn's disease during the alleged closed period of disability. However, the ALJ did discuss the MRE[4] findings in June 2018, noting "terminal ileum with stricture, as well as a mild mucosal

---

[4] Plaintiff notes that the ALJ referred to this imaging as an MRI, when in fact it was an MRE. ECF No. 10 at 8 n.2. However, Plaintiff's treatment notes describe the imaging as "MRI enterongraphy." *See* R. at 967. The Court is able to meaningfully determine the record that ALJ referred to and does not, as Plaintiff argues,

13

hyper-enhancement without other active inflammatory changes," "no fistula or fluid collection," and "mild dilation of the distal ileum proximal to the stricture without significant findings of obstruction." R. at 978 (citing R. at 616). The ALJ further evaluated the opinion of Plaintiff's gastroenterologist, Dr. Martin. R. at 980. The ALJ explained that Dr. Martin provided a medical source statement on October 9, 2018. R. at 980. That medical source statement noted that Plaintiff "had six or more bowel movements per day, each lasting 10-15 minutes" and that Plaintiff "would be absent from work four or more days per month." R. at 980 (citing R. at 868). The ALJ found Dr. Martin's opinion was not persuasive, because "[t]he treatment notes do not document the frequency and duration of bowel movements reported," and "[i]t is based on subjective statements rather than and not objective findings, and it is not consistent with the conservative treatment that Dr. Martin provided." R. at 980. The ALJ continued to evaluate another medical source statement from Dr. Martin but noted that was also unpersuasive because Dr. Martin's notes "recount periodic exacerbations of Cohn's symptoms" but "relatively minor symptoms at other times." R. at 980 (citing R. at 869–911).

Although the ALJ did not cite each piece of evidence during Plaintiff's alleged closed period of disability, the ALJ's discussion makes clear that she considered the entirety of Plaintiff's medical records in her review. *See Reid*, 769 F.3d at 865. The ALJ's explanation, noting periodic exacerbation of Plaintiff's Crohn's symptoms but otherwise minor symptoms at other times is supported by the record. For example, only once during the alleged closed period of disability did Plaintiff report having five to six bowel movements per day. R. at 635. The remainder of the records demonstrate that Plaintiff was not experiencing bowel movements with the same frequency or the same level of pain. *See, e.g.*, R. at 647 (reporting three to four bowel movements per day),

---

believe the ALJ's reference to an MRI warrants a finding that "the ALJ basically copied and pasted her review of this time period's evidence from her first Unfavorable Decision." ECF No. 10 at 8 n.2.

14

R. at 644 (reporting several bowel movements per day); R. at 641 (reporting two, sometimes up to four, bowel movements in a day); R. at 638 (reporting one to three bowel movements per day, and some pain following a bowel movement about twice per week); R. at 635 (reporting five to six bowel movements per day). Accordingly, the ALJ's discussion demonstrates that she considered the probative medical evidence in the record.

Somewhat relatedly, Plaintiff argues that the ALJ failed to consider the fact that Plaintiff met Listing 5.08 on October 11, 2017, as Plaintiff's BMI was 17.33. ECF No. 10 at 8. "The 'listings' is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.'" *Bennett v. Sullivan*, 917 F.2d 157, 160 (4th Cir. 1990) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). A claimant will meet a listing if his or her impairment "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." *Id.*; § 404.1525(c)(3). Listing 5.08, entitled "Weight loss due to any digestive order," mandates a finding of disability if "despite adherence to prescribed medical treatment, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 12-month period." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08. Plaintiff does not cite to, nor is the Court able to find, any evidence in the record of a second instance at least sixty days before or after October 11, 2017, where Plaintiff's BMI was less than 17.50. Plaintiff conceded as much at his ALJ hearing. *See* R. at 999 ("[H]e didn't meet the listing because you have to have that at least – that level of a BMI at least 60 days apart. But it was quite low at that point."). Because Plaintiff did not meet the Listing, the ALJ did not err in failing to acknowledge, cite, or discuss evidence relating to Plaintiff meeting Listing 5.08.

15

The ALJ's accurate discussion of, and citation to, the evidence in the record demonstrates that the ALJ properly considered probative medical evidence in the record. Accordingly, remand is not warranted on this ground.

### B. The ALJ Did Not Fail to Consider a Closed Period of Disability.

The Social Security Administration defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In evaluating a claimant's medical record, ALJ must consider whether the claimant was disabled for any twelve-month period between the alleged onset date and the date of the ALJ's decision. *See* Program Operations Manual System ("POMS") DI 25510.001 ("A closed period of disability is the period of disability with a definite beginning date and a definite ending date that the adjudicator establishes at the time of adjudication."). Thus, "[a] claimant may be entitled to a closed period of disability if the evidence shows he or she was disabled . . . for a continuous period of not less than 12 months, but based on the evidence is no longer disabled . . . at the time of adjudication." *Id.* If the ALJ fails to consider whether a claimant may have been disabled for a closed period between the alleged onset date and the date of the ALJ's decision, remand may be warranted. *See Allen v. Colvin*, No. CV 16-2557, 2017 WL 2399591, at *4 (D. Md. June 1, 2017) (citing cases).

However, implicit in an ALJ's finding that a claimant was not disabled at any time from the alleged onset date through the date of the decision, "is the fact that Plaintiff was not entitled to a closed period of disability at any relevant time." *Atwood v. Astrue*, No. 5:11cv002, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011), *report and recommendation adopted*, No. 5:11cv002, 2012 WL 1858764 (W.D.N.C. May 22, 2012); *Laws v. Astrue*, No. 3:08cv722, 2009 WL 3270770,

at *7 (E.D. Va. Oct. 8, 2009) ("The ALJ found that Plaintiff had not been under a disability from the alleged onset date through the date of his decision. In doing so, it is implicit that he also found that Plaintiff was not disabled for a closed period within that time span.") (internal citation omitted).

Here, Plaintiff did not allege a closed period of disability to the ALJ, but rather, on appeal to this Court, alleges that the ALJ should have awarded Plaintiff a closed period of disability from August 25, 2017, to either October 18, 2018, or January 25, 2019. ECF No. 10 at 10. However, as explained above, the ALJ's decision demonstrates that she considered the probative medical during the period suggested by Plaintiff. Similar to the plaintiff in *Laws*, here, "[t]he ALJ found that Plaintiff had not been under a disability from the alleged onset date through the date of his decision," and accordingly, "it is implicit that [s]he also found that Plaintiff was not disabled for a closed period within that time span." 2009 U.S. Dist. LEXIS 94127, at *22. Thus, the ALJ did not err on this ground, and remand is not warranted.

## VI. RECOMMENDATION

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 9, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 11, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date

this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

    2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

    The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk,
Virginia
February 1, 2024